A separate order follows.

---

Wade Marvin Smith, Tharrington, Smith, Raleigh, NC, for defendant.

**UNITED STATES of America,**

v.

**Claire M. Littlefield WILLIAMS, Defendant.**

**No. 5:95–CR–108–1–BR.**

United States District Court,
E.D. North Carolina,
Western Division.

Oct. 13, 1995.

*ORDER*

BRITT, District Judge.

Before the court is the United States' motion to compel defendant to undergo a psychiatric or psychological examination. Defendant has responded, and this matter is now ripe for disposition.

 On 21 June 1995, the Grand Jury returned a true bill of indictment against defendant, alleging that defendant "did kill, Victor Alan Williams, by shooting, in the perpetration of murder, in violation of Title 18, United States Code, Section 7(3) and 1111" and that defendant "did willfully use a firearm ... during and in relation to a crime of violence ... in violation of Title 18, United States Code, Section 924(c)(1)." On 21 July 1995, pursuant to Fed.R.Crim.P. 12.2, defendant filed notice of her intent to "introduce expert testimony relating to a mental condition bearing on the issue of guilt." Thereafter, the government filed the instant motion premised upon Fed.R.Crim.P. 12.2(c) and 18 U.S.C. §§ 4241 and 4242. The issue here is whether Rule 12.2(c), in conjunction with sections 4241 and 4242, authorizes the court to

16. Among the many ailments that Mr. Henry attributed to his slip and fall were loss of energy, irregular sleep, dizziness, muscle twitches, gas, hallucinations, fuzziness, thinking errors, urinary problems, pain in the testicles, change in bowel habits, shortness of breath, nasal problems, and greater irritability. *See* Dr. Copemann's Report at 6–8.

order psychiatric or psychological examination of a defendant who intends to offer expert testimony as to her mental state not relating to an insanity or diminished capacity defense. For the following reasons, the court concludes Rule 12.2(c) does not provide the court with such authority.

Fed.R.Crim.P. 12.2(c) provides in pertinent part that "[i]n an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. 4241 or 4242." Sections 4241 and 4242 pertain to the court's authority to require a defendant to submit to an examination to determine mental competency to stand trial or insanity at the time of the offense. While the interplay between Rule 12.2(c) and these sections is not clear upon a literal reading of them, some courts have held Rule 12.2(c) applies to cases in which a defendant intends to rely on a mental incapacity defense other than insanity. *See United States v. Banks*, 137 F.R.D. 20 (C.D.Ill.1991); *United States v. Vega–Penarete*, 137 F.R.D. 233 (E.D.N.C.1991) (McCotter, Mag.J.). Here, like the court in *United States v. Bell*, 855 F.Supp. 239 (N.D.Ill.1994), this court need not reach the issue decided in *Banks* and *Vega–Penarete* because defendant's defense theory does not depend on diminished mental capacity.

■ Although not entirely clear from defendant's response to the instant motion, defendant apparently intends to introduce expert testimony regarding the defense of battered spouse syndrome. (*See* Def.'s Resp. of 9/11/95 at 5–6.) Defendant unequivocally states she has no intention of relying upon an insanity defense nor a diminished capacity defense. Rather, defendant argues that the defense of battered spouse syndrome involves mental state at the time of the conduct alleged and does not relate to the issue of mental capacity. As such, she claims Rule 12.2(c) is not implicated.

Battered spouse syndrome is akin to self-defense. *See Moran v. Ohio*, 469 U.S. 948, 950, 105 S.Ct. 350, 351, 83 L.Ed.2d 285 (1984) (mem.) (Brennan, J., dissenting) (noting that battered woman's syndrome has gained support as a self-defense theory); *Bell*, 855 F.Supp. at 240 (dicta) (defense of battered wife syndrome "is in the nature of self-defense"); *New York v. Powell*, 102 Misc.2d 775, 424 N.Y.S.2d 626, 631 (N.Y.Co.Ct.1980) (battered woman syndrome appears to be within the defense of justification), *aff'd*, 83 A.D.2d 719, 442 N.Y.S.2d 645 (N.Y.App.Div. 1981). Even though this defense does in some way relate to a defendant's state of mind, it does not pertain to the defendant's mental capacity. As explained by the *Bell* court, "[t]he [battered spouse syndrome] does not excuse criminal conduct because a defendant was incapable of formulating a requisite mental state. Rather, it presumes such mental state to exist but offers a legally recognizable justification for the conduct." 855 F.Supp. at 240 (dicta).

The court recognizes that this holding is at odds with Magistrate Judge Charles K. McCotter, Jr.'s decision in *Vega–Penarete*. There, the court presumed, without any discussion, that battered spouse syndrome fell within the purview of diminished mental capacity defenses. *See Vega–Penarete*, 137 F.R.D. at 235 (framing the issue as one involving "a mental incapacity defense other than insanity."). With this finding inherent in *Vega–Penarete*, the court expressly disagrees.

For the foregoing reasons, Fed.R.Crim.P. 12.2(c) and 18 U.S.C. §§ 4241 and 4242 do not provide a basis for requiring defendant to undergo a psychiatric or psychological evaluation under the present circumstances. Accordingly, the government's motion to determine defendant's mental condition is DENIED.